IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON CHAVEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv- |
| | ) | |
| ADVOCATE MEDICAL CENTER, | ) | Judge |
| An Illinois Corporation, d/b/a/ DREYER | ) | |
| MEDICAL CENTER | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## *COMPLAINT AT LAW*

NOW COMES the Plaintiff, SHARON CHAVEZ, by and through her attorney, WALSH LAW GROUP, P.C., and presents her Complaint at Law and in support thereof, complains as follows:

### *NATURE OF THE ACTION*

1. This is an action under Title I of the Americans with Disabilities Act ("the ADA") and the Family Medical Leave Act ("FMLA") to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Sharon Chavez (hereinafter "Mrs. Chavez"), who was subjected to discrimination and retaliation based upon her disability and/or perceived disability and for exercising the rights enumerated above by her employer, Advocate Medical Center (hereinafter "Advocate").

### *PARTIES TO THE ACTION*

2. Prior to April 9, 2015, Mrs. Chavez was an employee of Advocate as defined and codified in 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(2).

3. At all relevant times, Mrs. Chavez was a "qualified individual," or perceived by Advocate as such, as defined and codified in 42 U.S.C. § 12111(8).

4. At all relevant times, Advocate was an "employer" as defined and codified in 42 U.S.C. § 12111(5) and 29 U.S.C. § 2611(4), headquartered in Downers Grove, Illinois.

5. At all relevant times, Advocate owned, operated and maintained a clinic in Batavia, Illinois called Dreyer Medical Clinic (hereinafter "Dreyer"). Dreyer was an affiliate of Advocate at all times complained of.

## *JURISDICTION AND VENUE*

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331. This action is authorized and instituted pursuant to Title I of the ADA, codified at 42 U.S.C. § 12101, *et seq.*, and the FMLA, codified at 29 U.S.C. 2601, *et seq*.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1)(2) and (3), in that Mrs. Chavez and Advocate reside in this district and all of the events complained of occurred in this district.

8. All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of a right-to-sue letter issued by the Equal Employment Opportunity Commission and received by Mrs. Chavez on or near February 28, 2016. *See* Exhibit A.

## *STATEMENT OF FACTS*

9. Mrs. Chavez was hired by Advocate to work at Dreyer on January 25, 2005. Her position at Dreyer was "physician's assistant."

10. In that capacity, Mrs. Chavez was able to diagnose patients and prescribe medications. Her performance evaluations and productivity were exemplary throughout her tenure at Dreyer.

11. In November 2014, she suffered a severe exacerbation of preexisting migraine headaches. The headaches became so intense that she applied for and received intermittent FMLA leave. She only needed to take off approximately 4-8 hours per month due to the headaches.

12. In January 2015, Mrs. Chavez was a patient of neurologist Brian O'Shaughnessy, M.D. at Dreyer for the migraines. He prescribed a Fentanyl patch, oral Norco 10/325mg and cleared her to use the patch while at work.

13. The nature of the medication Dr. O'Shaughnessy prescribed was not one that affected Mrs. Chavez's ability to perform the essential functions of her job or result in a threat to her patients.

14. After about five weeks of using the patch intermittently, Mrs. Chavez's superiors learned that Dr. O'Shaughnessy prescribed the medications, that she was cleared to use the patch at work, but began to perceive her as being disabled by drug usage.

15. On February 6, 2015, Mrs. Chavez experienced a migraine and asked her supervisor for permission to utilize a half-day of intermittent FMLA leave. Advocate initially approved the request, but then revoked it.

16. Immediately after the revocation of FMLA leave, Mrs. Chavez was ordered by her office manager, without prior warning or reasonable basis, to submit to a drug and alcohol screen. She passed the screen as there were no drugs or alcohol in her system.

17. Despite passing the drug and alcohol screen and without any reasonable basis, Advocate required that she participate in its Employee Assistance Program ("EAP") relative to substance abuse.

18. Advocate's pretextual reason for enrolling Mrs. Chavez in EAP was "impaired judgment," although her judgment was never impaired. The assigned counselor at EAP was Vanessa Houdeck, Psy.D.

19. As of February 12, 2015, Mrs. Chavez was placed on indefinite unpaid leave. On February 20, 2015, she was required to submit to neurological examinations with Dr. O'Shaughnessy and Dr. Bonnie Vastoba as part of the EAP. Again, the results of the neurological examinations were normal.

20. Dr. O'Shaughnessy and Dr. Vastoba provided notes clearing Mrs. Chavez to return to work, which were provided to Dreyer's Director of Human Resources, Matt Pattelli.

21. In February 2015, Dr. O'Shaughnessy also suggested that Mrs. Chavez submit to neuropsychological testing to show that she wasn't impaired or exhibiting "impaired judgment." She did and the results were again normal.

22. Dr. Houdeck then said that she wanted a second opinion from a neurologist or pain management specialist. At this point, Advocate was doctor shopping in order to find a reason to terminate Mrs. Chavez because it perceived her as being disabled by drug use and/or her request for FMLA leave.

23. On March 9, Dr. Houdeck conducted a "close out meeting" with Mrs. Chavez. At the meeting, Dr. Houdeck told Mrs. Chavez that she could return to work, that she would call "every 1-2 weeks" to check on her, but that she would be on "probation."

24. Mrs. Chavez protested that she was being put on probation due to a continuing perception that she was disabled due to drug usage even though she had not violated any of Dreyer's or Advocate's rules or policies. Advocate placed Mrs. Chavez on probation to facilitate her soon-to-be termination.

25. In mid-March, Mrs. Chavez requested that she be allowed to see patients every 30 minutes rather than every 15 minutes as a reasonable accommodation for her migraines. At that time, Dr. William Dagiantis, who was not disabled or perceived as disabled, was permitted to see patients every 30 minutes.

26. Mrs. Chavez's request for a modified schedule was denied. Advocate never engaged or offered to engage in an interactive process to determine an appropriate accommodation for Mrs. Chavez's migraines.

27. On March 13, 2015, Dreyer's Director of Human Resources Matt Pattelli informed Mrs. Chavez that she would not be paid for the time she was off during participation in the EAP.

28. On March 25, 2015, Dr. Houdeck called Mrs. Chavez and claimed that she called previously on March 13, March 16 and March 19, but that the calls were not returned.

29. In reality, Mrs. Chavez only received one call from Dr. Houdeck on or near March 19, 2015. Mrs. Chavez returned Dr. Houdeck's call on March 19, 2015 and left a message, which Dr. Houdeck acknowledged.

30. On March 31, 2015, Dr. Houdeck sent correspondence claiming the telephone call history constituted "noncompliance" with the EAP program even though Dr. Houdeck originally stated that she would check in "every 1-2 weeks."

31. On April 9, 2015, Mrs. Chavez was terminated. Advocate's pretextual reason was "failing to comply with EAP recommendations."

32. Advocate terminated Mrs. Chavez in retaliation for seeking an accommodation for her migraines, for utilizing FMLA leave, and because it perceived Mrs. Chavez as being disabled by drug usage. As a result of being terminated, Mrs. Chavez lost income and suffered severe emotional distress.

5

## *COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – DISCRIMINATION*

33. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

34. In early February 2015, Advocate began to perceive Mrs. Chavez as disabled due to migraines and prescription drug use.

35. Between early February 2015 and April 9, 2015, Advocate perceived Mrs. Chavez as disabled as codified in the ADA, 42 U.S.C. § 12102.

36. Once Advocate perceived Mrs. Chavez as being disabled, it engaged in acts meant to facilitate her termination, including forcing her to submit to a drug and alcohol screen, putting her on probation and referring her to EAP without any evidence that such a referral was warranted.

37. The drug and alcohol screen was not job-related or consistent with business necessity as defined in 42 U.S.C. § 12112(d)(4)(A).

38. Advocate engaged in the aforementioned conduct because it did not want an employee it perceived as being disabled with migraines and/or prescription drug usage to be employed by Advocate and/or Dreyer.

39. Other employees at Dreyer that Advocate did not perceive as being disabled were not similarly denied a modified schedule, placed on probation, referred to EAP or terminated without cause.

40. As a result of the aforementioned discriminatory acts of Advocate, Mrs. Chavez suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, SHARON CHAVEZ demands judgment against ADVOCATE MEDICAL CENTER in an amount in excess of $100,000.00, and for all legal and equitable relief

available pursuant to Title I of the Americans with Disabilities Act, plus attorneys' fees, punitive damages, litigation expenses and cost of suit.

### COUNT II – VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT – RETALIATION

41. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

42. Between early February 2015 and April 9, 2015, Advocate knew Mrs. Chavez was disabled as defined in the ADA or Advocate perceived her as being disabled within the meaning of the ADA.

43. Mrs. Chavez engaged in a protected activity when she notified Advocate that she was disabled and requested an accommodation due to migraines.

44. Mrs. Chavez engaged in a protected activity when she complained that she was the victim of discrimination due to a perception that she was disabled due to prescription medication usage.

45. Advocate did not retaliate against other similarly situated individuals that were not disabled but requested reasonable accommodations, such as a modified schedule.

46. On April 9, 2015, Advocate terminated Mrs. Chavez in retaliation for requesting a reasonable accommodation and for complaining of discrimination due to a perceived disability.

47. As a result of Advocate's aforementioned retaliatory acts, Mrs. Chavez has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MRS. CHAVEZ demands judgment against ADVOCATE HEALTH CARE in an amount in excess of $100,000.00, and for all legal and equitable relief available

pursuant to Title I of the Americans with Disabilities Act, plus attorneys' fees, litigation expenses and cost of suit.

### *COUNT III – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS*

48. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

49. In mid-March, 2015, Mrs. Chavez requested a reasonable accommodation of a modified patient schedule to deal with her migraine headaches.

50. Advocate refused to provide Mrs. Chavez with the reasonable accommodation as requested.

51. Advocate also refused to engage in the interactive process in order to determine a suitable accommodation for Mrs. Chavez.

52. Instead, Advocate terminated Mrs. Chavez on April 9, 2015.

53. As a result of Advocate's aforementioned refusal to engage in the interactive process, Mrs. Chavez has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MRS. CHAVEZ demands judgment against ADVOCATE HEALTH CARE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title I of the Americans with Disabilities Act, plus attorneys' fees, litigation expenses and cost of suit.

### COUNT IV - VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

54. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

55. Mrs. Chavez requested a reasonable accommodation to cope with her actual and/or perceived disability.

56. Mrs. Chavez was able to perform all the duties of a physician's assistant with the reasonable accommodation.

57. Advocate refused to provide Mrs. Chavez with a reasonable accommodation that would allow her to cope with her migraine headaches.

58. As a result of Advocate's aforementioned failure to accommodate, Mrs. Chavez has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MRS. CHAVEZ demands judgment against ADVOCATE HEALTH CARE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to Title I of the Americans with Disabilities Act, plus attorneys' fees, litigation expenses and cost of suit.

### COUNT V – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE

59. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

60. Prior to April 9, 2015, Mrs. Chavez was an employee of Advocate as defined and codified in 29 U.S.C. § 2611(2).

61. At all times complained of, Advocate was an "employer" as defined and codified in 29 U.S.C. § 2611(4).

62. In or near November 2014, Mrs. Chaves applied and was approved for intermittent FMLA leave due to migraine headaches.

63. Prior to February 6, 2014, Mrs. Chavez provided reasonable notice to Advocate that she would need to utilize intermittent FMLA leave for migraine headaches

64. On February 6, 2014, Mrs. Chavez requested permission to utilize a half-day of intermittent FMLA leave for a migraine headache.

65. Advocate initially granted the request, but then denied it and immediately sent Mrs. Chavez for a drug and alcohol screening and forced her to participate in EAP and numerous medical evaluations. The results of the drug and alcohol screen were normal.

66. As a result of Advocate's aforementioned interference, Mrs. Chavez has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MRS. CHAVEZ demands judgment against ADVOCATE HEALTH CARE in an amount in excess of $100,000.00, and for all legal and equitable relief available pursuant to the Family Medical Leave Act, plus attorneys' fees, litigation expenses and cost of suit.

### *COUNT VI – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - RETALIATION*

67. Mrs. Chavez repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

68. Prior to April 9, 2015, Mrs. Chavez was an employee of Advocate as defined and codified in 29 U.S.C. § 2611(2).

69. At all times complained of, Advocate was an "employer" as defined and codified in 29 U.S.C. § 2611(4).

70. In or near November 2014, Mrs. Chaves applied and was approved for intermittent FMLA leave due to migraine headaches.

71. Prior to February 6, 2014, Mrs. Chavez provided reasonable notice to Advocate that she would need to utilize intermittent FMLA leave for migraine headaches

72. On February 6, 2014, Mrs. Chavez requested permission to utilize a half-day of intermittent FMLA leave for a migraine headache.

73. Advocate initially granted the request, but then denied it and immediately sent Mrs. Chavez for a drug and alcohol screening and forced her to participate in EAP and numerous medical evaluations. The results of the drug and alcohol screen were normal.

74. On April 9, 2015, Advocate terminated Mrs. Chavez for attempting to utilize leave pursuant to the FMLA.

75. Mrs. Chavez was treated less favorably than other similarly situated employees that did not request FMLA leave.

76. As a result of Advocate's retaliation, Mrs. Chavez has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, MRS. CHAVEZ demands judgment against ADVOCATE HEALTH CARE in an amount in excess of $100,000.00, and for all legal and equitable relief available

pursuant to the Family Medical Leave Act, plus attorneys' fees, litigation expenses and cost of suit.

## *JURY DEMAND*

77. Mrs. Chavez demands trial by jury pursuant to the Title I of the Americans with Disabilities Act.

Respectfully submitted,

WALSH LAW GROUP, P.C.


By: ___/s/ Patrick J. Walsh___
      Patrick J. Walsh, Esq.

Patrick J. Walsh, Esq.
WALSH LAW GROUP, P.C.
30 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
(312) 466-7683
ARDC. No. 6287629
pw@thewalshlawgroup.com